Adam H. Springel, Esq. NBN 7187
aspringel@springelfink.com
Leonard T. Fink, Esq. NBN 6296
lfink@springelfink.com
**SPRINGEL & FINK LLP**
2475 Village View Drive, Suite 250
Henderson, Nevada  89074
Telephone:  (702) 804-0706
Facsimile:  (702) 804-0798

Harris L. Pogust, Esq.  (PA 52721)
hpogust@pbmattorneys.com
(admitted *pro hac vice*)
Bharati O. Sharma, Esq.  (PA 88440)
bsharma@pbmattorneys.com
(admitted *pro hac vice*)
**POGUST BRASLOW & MILLROOD, LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
Telephone:    (610) 941-4204
Facsimile:    (610) 941-4245

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHARI FETROW-FIX and THOMAS SORANNO, individually and on behalf of all others similarly situated; | Case No.: 2:10-cv-00560-RLH-PAL |
| Plaintiff(s), | |
| vs. | **PLAINTIFFS' MOTION TO SANCTION DEFENDANTS' ATTORNEYS FOR IMPROPER CONDUCT DURING DEPOSITIONS** |
| HARRAH'S ENTERTAINMENT, INC., a Delaware Corporation; HARRAH'S OPERATING COMPANY, INC.; HARRAH'S LAUGHLIN, INC.; and DOES No. 1 through 100, inclusive, | |
| Defendant(s). | |

Plaintiffs Chari Fetrow-Fix and Thomas Soranno (collectively, "Plaintiffs"), by and through their attorneys, in accordance with Federal Rules of Civil Procedure ("FRCP") 26, 30 and 37 and this Court's inherent authority to supervise actions pending before it, respectfully move the Court to enter its order sanctioning Defendants' attorneys for their improper conduct

during depositions.  Plaintiffs also move for an order that Defendants pay reasonable attorneys' fees and costs incurred by the moving party in connection with this proceeding, that Defendants be prohibited from making improper "speaking" objections during depositions, and that the deposition of Candy Basso be resumed at Defendants' expense.

This Motion is based upon the attached Memorandum of Points and Authorities, Federal Rules of Civil Procedure ("FRCP") 26, 30, 33, 34, 37, and all other pleadings and papers filed in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

This case involves Defendants' failure to pay overtime and other compensation due to Plaintiffs and members of the proposed class action in violation of federal and state law. Plaintiffs are former employees of Harrah's who are bringing this action on behalf of themselves as well as similarly situated former and current employees to recover unpaid and/or overtime compensation pursuant to 29 U.S.C. §§201-219, the Fair Labor Standards Act of 1938 and Nevada state law.  The crux of Plaintiffs' allegations is that Plaintiffs and similarly situated employees or former employees of Defendant were not compensated for their attendance at pre-shift meetings, which are often referred to as "Buzz Sessions."

On April 13, 2011, during the deposition of Terry Brynes, VP of Total Rewards at Harrah's Entertainment, defense counsel became highly emotional, yelling and cursing at Plaintiffs' counsel, slamming his fists down on the conference room table, and providing suggestive answers to the deponent.  The following day, at the deposition of Candy Basso, defense counsel made improper "speaking" objections and repeatedly instructed the witness not to answer properly posed questions, even though counsel did not seek a protective order,

leaving Plaintiffs' counsel with no choice but to prematurely terminate the deposition. Plaintiffs seek sanctions against Defendants for defense counsels' improper and unprofessional behavior and attorneys' fees and costs.  Plaintiffs also seek an order from the Court prohibiting defense counsel from making improper speaking objections and coaching witnesses during depositions and to produce Candy Basso for a continuation of her deposition, at Defendants' expense.

## II.  LEGAL ARGUMENT

### A.  Plaintiffs Request the Court to Issue an Order Preventing Defendants From Making Improper Objections During Depositions, to Order the Continuation of Candy Basso's deposition, and to Sanction Defendants for Improper Conduct During Depositions.

The function of discovery is to get to the facts. *Continental Illinois Nat. Bank & Trust v. Canton*, 136 F.R.D. 682, 688, (D. Kan. 1991). A discovery deposition is intended to provide "an effective means of gathering non-privileged information 'relevant to the subject matter involved in the pending action.'" *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 641 (N.D. Ind. 1991) (citation omitted).  At the same time, "an oral deposition is not merely a device to uncover and develop information. It also provides a legitimate and efficient means of testing a witness's knowledge, recollection and veracity." *Smith*, 139 F.R.D. at 646.

Parties of a deposition are entitled to conduct depositions in accordance with FRCP 26(c) and 30. FRCP 30(c) is clear regarding objections during depositions:

An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered

by the court, or to present a motion under Rule 30(d)(3).

Rule 30(d)(3) provides that a deponent may terminate the deposition if it is being conducted in bad faith, or in an a manner that unreasonably annoys, embarrasses, or oppresses the deponent.  This burden of proof lies *with the objecting deponent.  See Rivera v. Berg Elec. Corp.*, 2010 U.S. Dist. LEXIS 87874 (D. Nev. July 28, 2010).  If irrelevant or objectionable questions are asked during a deposition, "the examination shall proceed, with the testimony being taken subjection to the objections." *See In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 618 (D. Nev. 1998). The deponent must answer objectionable questions, and a judge at pretrial or at a trial should resolve such objections. *Id.*

1.  **Attorney Rick Roskelley Exceeded his Role as Deponent's Counsel When he Attempted to Improperly Prevent the Witness From Answering Questions, Coached His Client Through "Speaking Objections", and Yelled and Cursed at Plaintiffs' Counsel.**

On April 13, 2011, during the Deposition of Terry Byrnes, VP of Total Services at Harrah's Entertainment, Plaintiffs' counsel asked Mr. Brynes a hypothetical question based on evidence in the record.  Following the question, Rick D. Roskelley, attorney for Defendants, improperly objected, stating that the deponent does not have to answer a hypothetical.  He then proceeded to yell and curse at Plaintiffs' counsel:

> MS. SHARMA: Let's say, hypothetically speaking, if I were a dealer and my schedule is nine to five and I was told to attend a five-minute, pre-shift meeting, when would I attend that meeting?
>
> MR. ROSKELLEY:  Objection:  Foundation. We're getting into the realms of incomplete hypotheticals, where you're asking him to guess –
>
> MS. SHARMA:  I said it's a hypothetical.  It's a hypothetical –
>
> MR. ROSKELLEY:  But he doesn't have to answer a hypothetical.
>
> MS. SHARMA:  Yes, he does.

MR. ROSKELLEY:  He's here to answer facts as to what he knows.

MS. SHARMA:  Unless it's attorney-client privileged information –

MR. ROSKELLEY:  Listen, he's here to answer facts that he knows, not to answer a hypothetical of things that have no basis in fact.

MS. SHARMA:  Okay.  Your objection is noted in the record.

MR. ROSKELLEY:  Yeah, and you can answer, if you can.

MS. SHARMA:  And that's an improper –

**MR. ROSKELLEY:  Then call the fucking discovery commissioner. Okay?[1]**

MS. SHARMA:  Is that on the record?

MR. ROSKELLEY:  Yes, it is.  I mean, this is ridiculous asking a hypothetical question of what he doesn't know.  I've made my objection - -

MS. SHARMA:  You don't know what he knows and doesn't know.

MR. ROSKELLEY:  I've made my objection.  He can go ahead and answer.

*See* Exh. A, Deposition of Terry Brynes at pp. 77:8-78:16.

Mr. Roskelley's objection and outburst was improper for a number of reasons.  First, the hypothetical question was based on facts in the record.   This litigation centers on Harrah's hourly employees' attendance at pre-shift meetings.   Second, there is nothing improper about asking a lay witness a hypothetical question based on facts in the record. *See Miller v. Vill of Pinckney, 2008 U.S. Dit. LEXIS 68223* (E.D. Mich. Sept. 9, 2008) (stating that "[t]here is no prohibition against asking hypothetical questions of a lay witness during a deposition) (citing Fed. R. Civ. P. 30; Fed. R. Evid. 701); *see, also, Carson Harbor*

---

[1] Although his tone is unable to be reflected in a written transcript, at the time he made this statement, Attorney Roskelley was yelling at Plaintiffs' counsel and slammed his fists down on the conference room table.

*Vill. v. Unocal Corp.*, 227 F.3d 1196, 1205 (9th Cir. Cal. 2000) (referencing lay witness's responses to a hypothetical question during his deposition).   A party may object to an irrelevant line of question, but instructing a witness not to answer a question because it calls for inadmissable facts is sanctionable. *Boyd v. University of Maryland Medical Systems*, 173 F.R.D. 143, 144, 149 (D. Md. 1997).

Third, even assuming, *arguendo*, the hypothetical was improper, Mr. Roskelley's response was to assert an improper "speaking" objection.   However, "[t]wo wrongs do not make a right." *JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 U.S. Dist. LEXIS 40185, *19-22 (N.D. Cal. Apr. 5, 2010).   An objection must be stated concisely in a nonargumentative and nonsuggestive manner. *JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 U.S. Dist. LEXIS 40185, 19-22 (N.D. Cal. Apr. 5, 2010).   Attorney Roskelley's "speaking" objection, however, certainly was suggestive, stating that the witness is "here to answer facts that he knows", not hypotheticals, and then stating to the witness that "you can answer, if you can." The witness was successfully coached as he in turn responded as follows:

> THE WITNESS:  What's not known are the clock-in rules there.  Like, I don't know that theater's clock-in rules, so all our people have hourly clock-in rules, and so I really don't know them. So -- you know, if your shift start at nine o'clock -- okay? -- you have a clock-in rule and a clock-out rule.  Okay?  I don't know what those are for that dealer you're speaking of.  Right? Do you follow me on that?

*See* Exh. A, Deposition of Terry Brynes, at pp. 78:17-78:25.

Finally, and most importantly, there is no excuse for yelling and cursing at Plaintiffs' counsel to "call the fucking discovery commissioner", while slamming his fists in a threatening manner. *See, e.g.*, *JSR Micro, Inc. v. QBE Ins. Corp.*, 2010 U.S. Dist. LEXIS 40185, 19-22 (N.D. Cal. Apr. 5, 2010) (finding defense counsel's use of the swearword "damn" inappropriate, finding speaking objections inappropriate and stating that, "As

officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent. In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom.") (citations omitted).

    2.    **Attorney Wendy Krincek Exceeded her Role as Deponent's Counsel When She Repeatedly and Improperly Instructed the Witness Not to Answer Relevant, Non-Privileged Questions, Forcing Plaintiffs' Counsel to Prematurely Terminate the Deposition.**

The day after Mr. Brynes' deposition, Plaintiffs' counsel attempted to depose Candy Basso, Director of Human Resources at Harrah's Laughlin. Ms. Basso was represented at the deposition by Attorney Wendy M. Krincek. Ms. Basso had previously been deposed on September 20, 2010. However, just days after her first deposition, Defendants produced highly relevant documents and emails which indicated, among other things, that Ms. Basso knew that employees were being required to attend pre-shift buzz sessions without pay and employees were being disciplined if they failed to attend the buzz sessions or attended them late. *See, e.g.*, Exh B. Because of these emails and over 1,000 pages of subsequently produced documents, Defendants agreed to produce Ms. Basso for a second deposition.

Thereafter, as a result of discovery related to the Opt-in Plaintiffs, Defendants produced another 4,000 pages of documents. Thus, after Ms. Basso's first deposition and prior to her second deposition on April 14, 2011, Defendants produced over 5,000 pages of documents. It is also worth noting that, as a result of that document production, Plaintiffs noticed seven 30(b)(6) depositions directed to Defendant Harrah's Laughlin. Defendants identified Ms. Basso as the PMK for five of those seven 30(b)(6) depositions.

Unfortunately, shortly before Ms. Basso's second deposition, which was scheduled to take place on April 14, 2011, Defendants attempted to improperly limit the scope of her deposition.  Defendants informed Plaintiffs that Plaintiffs cannot inquire into any subject matter on which Ms. Basso was previously questioned or could have been questioned.  *See* Exh. C, 3/24/2011 letter from Wendy M. Krincek at p. 3.  Plaintiffs responded that they would not be so limited as essentially all of the documents produced after Ms. Basso's first deposition related to subject matters that were or could have been inquired into at her first deposition; however, a proper examination was not and could not have been conducted absent those highly relevant documents.  *See* Exh, D, 3/28/2011 letter from Bharati Sharma at p. 3.  Defendants did not respond to Plaintiffs' letter *and did not file a Motion for Protective Order*; although following Plaintiffs' correspondence, Defendants did move for a protective order from the 30(b)(6) deposition of an employee at Harrah's Entertainment regarding clocking-in, clocking out procedures.  *See* Docket No. 65.

Despite failing to seek a protective order, during Ms. Basso's second deposition, counsel for Defendants repeatedly refused to allow Ms. Basso to answer questions regarding documents that were produced following her first deposition, unless Plaintiffs' counsel showed Ms. Basso the document or identified the document to which Plaintiffs' counsel's questions correlated.  For strategic purposes, Plaintiffs' counsel chose not to produce documents in reference to her questions.  As a result, Defense counsel repeatedly, improperly instructed the witness not to answer questions, to the point where, after first attempting to reach the Court for guidance, Plaintiffs' counsel was left with no choice but to prematurely terminate the deposition.

During one particular line of questioning regarding pre-shift buzz sessions at the slot department in Harrah's Laughlin, the witness clearly was expecting to be asked questions regarding the slot department:

> Q.   And what was the issue with the slot department?
>
> A.   It was confusion over employees clocking in seven minutes prior to the hour and thinking they were on the clock and, therefore, being paid for that time. **I think we are even going to go over that.**  I mean I don't know if we are going to go over it but it's -- the issue started on whether they could discipline somebody for being late if they were late to a buzz and the shift manager was confused as to when their official time actually started on the clock and it didn't start when they clocked in, it started at their scheduled shift time.
>
> So there was some confusion there and, you know, of course, I told her, no, you can't discipline because their shift didn't start.

*See* Exh. E, Deposition of Candy Basso, Vol. II, at pp. 9:17-10:8.

Despite expecting to be asked questions on the slot department, the witness was also expecting the relevant documents to be introduced as an exhibit during her examination (presumably because she was prepped on the documents).  When the documents were not introduced, she requested to "go over the documents."  When Plaintiffs' counsel advised that she only wanted to know what the witness recollected, her attorney improperly refused to allow her to answers questions unless the relevant documents were first identified:

> A.   And I really feel like we've gone over this like in my six hours or five hours that I spent the last time we went over this to the endth degree.
>
> Q.   I mean if you want me to refer you back to your deposition testimony, I can but in fact your attorneys I'll represent to you produced a number of documents on which you were cc'ed or which you issued since the time of your deposition that I did not have at the time you were deposed and that's why you are here today to discuss that.
>
> **A.   Well, let's go over the documents.**
>
> **Q.     Well, it's up to me whether or not I want to produce those**

1   **documents.**

2   A.   Oh, okay.

3   MS. KRINCEK:  Let me interrupt and I think that's fair and we did talk about
4   compensation versus you giving hypotheticals when people were clocking in
5   and that kind of thing.

6   So if you want to ask her about the e-mail chain with Vicki James that
    was produced after her deposition, go ahead but beyond that, **I'm not going
7   to let her answer questions about issues that we discussed last time
8   unless you can point me to a document that we produced.**

9   MS. SHARMA:  If you can point me to the deposition testimony where she
10  talked about the slot department then perhaps I'll move on but I don't need to
    produce a document to her in order to ask her these questions that were not
11  discussed and that are based on documents that you produced.

12                                    * * *

13  Q.   (BY MS. SHARMA) I believe that's what I said, the slot department.

14  A.   **I wish I could see the document.  I don't -- I don't know if it was -- it
15  wasn't a compensation issue.**

16  Q.   **I'm only asking what you recollect.**

17  A.   It was -- the original question was that this employee was late for a buzz
18  session and then we had some conversation back and forth and it would be
19  and it's like late for the buzz session because late for their shift and what
    time does their shift start.

20  And she said that the -- you know, they are clocked in seven minutes
21  to the hour.  And I said well, does their shift start at for an example 7:53 or
    does their shift start at 8:00?  If their shift starts at 7:53 and they are late,
22  then they are late.  If their shift starts at eight o'clock and they are late, then
23  they are late but it's according to when their shift starts.

24  The best that I can recollect from that -- from that exchange of her and
25  I.  You know, I'm sure I don't have it exact but -- and then she was confused
    on, well, don't they get paid from the minute they clock in?  And I said no,
26  you know, they have up to seven minutes to clock in and they have up to
    seven minutes to clock out.
27
28  Q.   And is the reason why they don't get paid from the minute they clock in
    because the system that's used to track time and attendance Time Works,

1   correct?

2   A.   Correct.

3   Q.   Does Time Works round to the nearest quarter hour?

4

5   A.   Yes, it does.

6   Q.   And would that be the case for every department in Harrah's Laughlin?

7   A.   Correct.

8   Q.    In other words, Time Works works the same throughout Harrah's
9   Laughlin?

10   A.   Correct.

11   Q.   Okay.  So how would it work if an employee shift started at 7:45 and
12   Time Works rounds to that nearest quarter hour?

13   MS. KRINCEK:  I'm going to object. This is material we covered last time.
14   There's been nothing produced that justifies reopening up this line of
     question or asking questions that could have been asked last time.  **I don't**
15   **want you to answer.**

16   MS. SHARMA:  **So you are instructing the witness not to answer that?**

17   MS. KRINCEK:   Unless you can explain to me what newly produced
18   information this is based on especially since we -- you specifically
     questioned Candy about rounding during her last deposition, **yes, I think it's**
19   **burdensome, I think it's harassing, yes.**

20   MS. SHARMA:  I disagree and I think you produced a number of documents
21   showing different schedule start times which is information we did not have
     before, this is new information and I think it's completely appropriate and
22   proper.

23   MS. KRINCEK:  I don't know what documents you are referring to.
24

25   MS. SHARMA:   Buzz schedules, buzz session reports indicating different
     scheduled shifts which we didn't have previously.
26

27   MS. KRINCEK:  Buzz session schedules are schedules of buzz sessions, not
     start times plus I don't see how it has anything to do with rounding.
28

     MS. SHARMA:  **It's all related.  I mean if you are going to instruct her**

**not to answer, then we'll follow up with the court.  Is that your position?**

**MS. KRINCEK:  That's my position.**

*See* Exh. E, Deposition Transcript of Candy Basso, Vol. II, at pp. 12:15-17:25.

Ms. Krincek's obstruction of the deposition continued:

Q.  (BY MS. SHARMA) And you mentioned the issue in the table games
department was that they were attending buzz three minutes to the hour?

A.  Yes.

Q.  And how was that issue brought to your attention?

A.  Again I testified to this the last time.  **It was during a survey in 2009
where a dealer made a comment to somebody in my office that they don't
think they should have to attend buzz when they are not getting paid for it.**

Q.  And how do you know that they were attending three minutes to the hour?

MS. KRINCEK:  Objection, calls for speculation.

Q.  (BY MS. SHARMA) She just testified –

A.  I told you what the employee said so –

Q.  Okay.  So when you say they were attending buzz three minutes to the
hour, that was the complaint from the employee?

MS. KRINCEK:  Objection, mischaracterizes the testimony.

THE WITNESS:  An employee made that comment to somebody in my
department and they, you know, brought that to my attention.

Q.  (BY MS. SHARMA) And they specifically said that they were attending
three minutes –

A.  No, they did not.

Q.  Buzz sessions three minutes –

MS. KRINCEK:  Wait. I'm going to object again.  Again this is another line of
questioning that you went over last time.  It's inappropriate to be re questioning
her again on the same line of questioning that you asked her last time.  This
isn't an opportunity to get the second bite of the apple.  If you have legitimate

questions arising from documents that were produced by us post her first deposition, feel free to ask those questions but –

**MS. SHARMA: All these questions are based on documents that were produced. As I said –**

**MS. KRINCEK: Show us the documents.**

**MS. SHARMA: I'm running this deposition, I'm conducting it, it's up to me whether or not I want to use the documents.**

**MS. KRINCEK: Tell me which documents you –**

MS. SHARMA: I don't have to. I don't have to disclose to you my outline.

MS. KRINCEK: Okay. Well, I can point to testimony in her deposition transcript from last time on this exact issue. If you can't explain to me what the new documentation is that justifies re questioning her about the same thing then, yes, I'm going to instruct her not to answer or -- yeah, not to answer questions on this subject matter.

MS. SHARMA: Well, I certainly don't ever recall her testifying that the employee that made a complaint said three minutes to the hour was the complaint about having or attending a three-minute buzz session was their complaint.

MS. KRINCEK: So how does that possibly justify you re asking the questions on the same issue again?

MS. SHARMA: This is new testimony. You know what, I'm not going through that. I'm asking her the questions.

**MS. KRINCEK: Go ahead and I'll instruct her not to answer.**

**MS. SHARMA: Okay. Well, then let's get the judge on the phone.**

**MS. KRINCEK: Be my guest.**

MS. SHARMA: Can we go off the record?
(Discussion off the record.)

Q.   (BY MS. SHARMA) Back on the record. Let the record reflect that we called the judge's chambers and the judge is unavailable, she's in a hearing so we will move forward with the deposition and we will I guess deal with it through motions and ask that this witness be produced again and seek costs.

13

*See* Exh. E, Candy Basso Deposition Transcript, Vol. II, at pp. 18:15-21:23.

Defense counsel's conduct during the deposition was improper for a number of reasons.  First and foremost, Defendants agreed to produce Ms. Basso for a deposition based on documents that were (belatedly) produced after her first deposition.  Plaintiffs' counsel's questions were related to those documents that were produced since Ms. Basso's first deposition.  That the initial 1,000 pages of documents that were produced after her first deposition related to topics that were covered during her first deposition, is no basis to instruct the deponent not to answer questions, particularly when this issue was discussed prior to the deposition and Defendants did not seek a protective order.

Moreover, the above line of questioning was related to so many different documents that it was absurd for counsel to insist that Plaintiffs identify which documents the questions were based upon.  However, as just one of many examples, with regard to the questions regarding Timeworks and "rounding," Defendants produced an email from Candy Basso stating that employees are given "7 minutes before the time they start to clock in and then we give them 7 minutes after they get off to clock out.  That total 14 minutes so we avoid paying a quarter hour because you have to have at least 15 minutes before overtime is paid." *See* Exh. F.

Further, not only was the line of questioning related to various subsequently produced documents, Defense counsel's position to not let Ms. Basso answer questions relating to Timeworks and rounding is particularly egregious in light of the fact that in recently moving for a protective order from having to produce a 30b(b)(6) witness from Harrah's Entertainment regarding Timeworks and rounding, Defendants offered to produce Candy Basso to discuss the clock-in, clock out procedures at Harrah's Laughlin.  *See* Exh.

C, 3/24/2011 letter from Wendy Krincek at p. 2.

Ms. Krincek also prevented Ms. Basso from answering questions related to an employee complaint made in 2009 on the basis that Ms. Basso previously answered those questions, unless Plaintiff produced the relevant document.  Such a position is, again, remarkable in light of the fact that Plaintiffs repeatedly asked for documents related to the complaint made during the 2009 employee survey, and were repeatedly told that it was a verbal complaint and no relevant documents existed.  *See, e.g.*, Exh. G, 3/15/2011 letter from Bharati Sharma at p. 7 and 3/25/2011 letter from Wendy Krincek at p. 4.  Moreover, Defendants chastised Plaintiffs for "attempting to meet and confer regarding issues already rule upon by the Court."  *See* Exh. G, letter from Wendy Krincek at p. 4. Yet, at 7:03 p.m. the night before Ms. Basso's deposition, Defendants produced a redacted, written version of that very same complaint made during the 2009 Survey.  *See* Exh. H.  Plaintiffs' counsel had not even received it in time to be able to reference it during Ms. Basso's deposition, although the questioning of Ms. Basso certainly related to a number of other documents.

Secondly, even if some the topics were covered during the first deposition, instructing the witness not to answer questions because of same is improper.  As the court in *Smith* observed at length, "counsel should be free to follow-up and explore the same subject matter covered during a previous examination, especially where the deponent's earlier responses were evasive, equivocal, or inconsistent with other testimony or evidence." *Smith, supra*, 139 FRD at 646.

Finally, Defense counsel's conduct was improper given the fact that *prior* to Ms. Basso's deposition, Defendants wrote to Plaintiffs advising that Plaintiffs would be limited in their examination.  Even though Plaintiffs responded that they would not be so limit

during their examination of Ms. Basso, Defendants failed to respond and failed to file a Motion for Protective Order, as required by the Federal Rules of Civil Procedure.

Rule 30(d) allows the deponent or party to limit or terminate the deposition only when the examination "is being conducted in bad faith or in a manner that *unreasonably* annoys, embarrasses, or oppresses the deponent or party." (emphasis added). *"The Rule is not designed to stop uncomfortable but relevant interrogation or to forestall the elicitation of testimony damaging to a party's case."*  Smith v. Logansport Comm. School Corp., 139 F.R.D. 637, 646 (N.D. Ind. 1992) (emphasis added).  It is not a coincidence that Ms. Krincek allowed Ms. Basso to answer a few background questions on Timeworks, but stopped the questioning and would not permit the witness to answer when Plaintiffs' counsel got to the more relevant inquiry as to how Timeworks rounds employees' time.

Finally, Rule 30(d)(1) provides, in pertinent part, as follows: "A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3)." Paragraph (3) is the provision which provides for a motion for protection against conducting a deposition in bad faith or in a manner that is designed to unreasonably annoy, embarrass or oppress the deponent.  *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 616-619 (D. Nev. 1998).  It is not the embarrassment or annoyance which may be caused by unfavorable answers that is the criteria of 30(d)(3). It is the "manner" in which the interrogation is conducted that is grounds for refusing to proceed.  ***The last circumstance "usually results in the termination or interruption of the deposition while the objecting party seeks a protective order from the court. If such a judicial determination is not sought, this Court will presume that there were not sufficient grounds for the objection and instruction not***

*to answer, or the termination of the deposition, and that the action was undertaken merely to obstruct the discovery process."* In re Stratosphere Corp. Sec. Litig., 182 F.R.D. 614, 616-619 (D. Nev. 1998) (emphasis added).  As discussed above, at no time did Defendants file a Motion for Protective Order.  Indeed, it was Plaintiffs' counsel during the deposition that stopped to call the Court in an effort to seek a ruling on the validity of Defense counsel's objections and in effort to keep the deposition moving forward.

That was to no avail, however, as Ms. Krincek's obstruction of the deposition continued until Plaintiffs' counsel finally had to terminate the deposition:

> Q.   (BY MS. SHARMA) So what would happen, for example, if an employee has exhausted their three days, a salaried employee, and they take a sick day and they did not request PTO time, would that sick day be deducted from their paycheck?

> MS. KRINCEK:  Look, I'm going to object again because this is yet one more line of questioning that has nothing to do with any documents that were produced after her deposition the first time.

> MS. SHARMA:   You produced 5,000 pages of personnel and payroll documents.

> MS. KRINCEK:  Exactly.  We produced those documents because you added [opt-in] plaintiffs, not because we didn't produce anything timely, it's just more documents that had to do with similar previous personnel documents that we produced including the handbook that talks about all of these types of policies that were produced months before her deposition.

> * * *

> MS. SHARMA:  Okay.  Well, this document was produced after her deposition and so I'm asking her about it.

> * * *

> **MS. KRINCEK:  Not through plaintiff's fault, not through our fault.  So I'm instructing her not to answer.**

> **MS. SHARMA:   There's no -- okay.  Well, we are going to have to reschedule her deposition.  I mean if that's your position, then we are**

17

1   **rescheduling her deposition.**

2   MS. KRINCEK:  As a courtesy, we are allowing you to depose her a second
3   time to cover documents that we produced post her first deposition, not the
    documents we produced only because plaintiffs later added people and wanted
4   us to produce their personnel documents as a part of initial disclosure.

5                                   *  *  *

6   MS. KRINCEK:  You had these documents before.

7   MS. SHARMA:  I did not.  I did not.  Document bate stamp 2969 I did not have
8   at the time of her deposition.

9   MS. KRINCEK:  Not for Ronald Watson because you didn't have him join the
10  litigation until later but certainly for other employees and again it's all coming
    from policies in the handbook that were produced months before her deposition
11  to begin with and that's the questions you are asking her about.

12  Q.   (BY MS. SHARMA)  Candy, if you look further down it states dates to be
13       deducted and then it states 10/26/08 and then next to that it says EO sick,
         FMLA at 3:00 p.m.  Do you know what that means?
14

15  **MS. KRINCEK:  I'm going to object and instruct her not to answer.  You
    are abusing the discovery process at this point.**
16

17  **MS. SHARMA:  Okay.  Well, then at this point we are going to have to end
    the deposition and take it to the judge.**
18

19  **MS. KRINCEK:  That's fine.**

20  *See* Exh. E, Deposition of Candy Basso, Vol. II, at pp. 28:18-34:1.

21      As previously discussed, Defendants represented that Plaintiffs could inquire into

22  documentation beginning from Harrah's.Fetrow001103 for Candy Basso.  *See* 3/24/2011

23  letter, attached as Exh. C.  The above questioning related to a document Defendants had

24  bates stamped Harrah's.Fetrow.002969.  Defendants' position that Plaintiffs could not

25
26  inquire into the document because it was produced as part of the Opt-in Plaintiffs' discovery

27  requests rather than as part of Defendants belated production in response to the

28  Representative Plaintiffs' initial discovery first served in August 2010, is further evidence

                                        18

of defense counsel's improper conduct.  It was a subsequent document that was produced. At no time did Defendants advise that Plaintiffs could not inquire into those subsequently produced documents.  *See, e.g.,* Exh. C at p. 3.

Further, the fact that it was produced as part of discovery related to the opt-in plaintiffs does not change the fact that it was a relevant document to explore at Ms. Basso's deposition.  Indeed, Defendants' position to the contrary is startling considering Defendants deposed all of the opt-in plaintiffs and during their depositions inquired into documents produced by the opt-in plaintiffs as well as documents produced by Defendants related to the opt-in plaintiffs.  Thus, Defendants improperly refusing to allow the witness to answer questions, again, appears to be in bad faith and is in flagrant disregard of the Federal Rules of Civil Procedure and case law, which state that a party may instruct a deponent not to answer only (1) when necessary to preserve a privilege; (2) to enforce a limitation on evidence directed by the court; or (3) when a deposition is terminated *while the objecting party* seeks a protective order from the court.  None of those three exceptions applied to the instant case.

3.    **Sanctions Against Defendants Are Warranted.**

Deposing counsel is entitled to have the deponent, and the deponent alone, answer questions. *See in re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev.1998). Rules 26(f), 30, 37 (a), and 16 vest the court with broad authority and discretion to control discovery, including the conduct of depositions. *See Hall v. Clifton Precision*, 150 F.D.R. 525, 527 (E.D. Pa. 1993).  Likewise, the court has inherent authority "to sanction parties or their lawyers for improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001), citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980).  This includes the ability of a

court to award attorneys' fees to the innocent party. *Primus Auto. Fin. Serv. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *see also Kleiner*, 751 F.2d at 1209 "[s]uch sanctions include assessment of attorneys' fees and costs…disqualification of counsel…and monetary penalties….").

Rule 30 allows for sanctions to be imposed upon a party for improper conduct during a deposition and provides that "[t]he court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent." *Gresham v. Petro Stopping Ctrs.*, 2010 U.S. Dist. LEXIS 66227 (D. Nev. June 14, 2010) (citing Fed. R. Civ. P. 30(d)(2).   Rule 30 also provides that an objection during deposition "[m]ust be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

As noted above, defense counsel repeatedly overstepped their role as deponents' counsel by yelling and cursing at Plaintiffs' counsel; attempting to coach the witnesses through improper "speaking objections", and repeatedly instructing one of the witnesses not to answer questions, even though the questions were not privileged and no motion for protective order had been filed.   Repeatedly preventing Ms. Basso from answering valid questions are violations of the rules of discovery and a blatantly obvious attempt to influence and form the client's testimony. Ms. Krincek's behavior unlawfully obstructed the Plaintiffs' ability to ascertain the facts. *See,   e.g, Gresham v. Petro Stopping Ctrs.*, 2010 U.S. Dist. LEXIS 66227, 2-3 (D. Nev. June 14, 2010) (finding that counsel had violated Rule 30(c) of the Federal Rules of Civil Procedure "[b]y phrasing objections that suggest

answers to the witness and instructing the witness not to answer when unnecessary to preserve privilege; and, therefore granting the request for attorney's fees and costs for filing the motion and ordering the requesting party to file a statement of attorneys' fees and costs pursuant to LR 54-16(b)).

This Court should not allow both Mr. Roskelley and Ms. Krincek to conduct themselves in blatant disregard of the rules for taking a deposition and Plaintiffs' right to cross-examine and ascertain the facts. For these reasons, Plaintiffs respectfully submit, the Court should sanction Defendants' Attorneys.

## III.   REQUESTED RELIEF

For the reasons stated above, Plaintiffs respectfully request that this Court grant Plaintiffs the following relief:

(1)   Attorneys' fees and costs of this motion;

(2)   Fees and costs associated with the deposition of Candy Basso that took place on April 14, 2011 that was prematurely terminated;

(3)   An order resuming the deposition of Candy Basso at Defendants' expense; and

(4)   An Order prohibiting Defendants from making improper "speaking" objections during depositions.

**IV.    CONCLUSION**

Based on the foregoing, Plaintiffs' respectfully request that this Court enter an order as outlined above.


DATED:  April 26, 2011

**POGUST BRASLOW & MILLROOD, LLC**


By: /s/ Bharati O. Sharma
    Harris L. Pogust   (PA 52721 )
    hpogust@pbmattorneys.com
    (admitted *pro hac vice*)
    Bharati O. Sharma   (PA 88440)
    bsharma@pbmattorneys.com
    (admitted *pro hac vice*)
    Eight Tower Bridge, Suite 1520
    161 Washington Street
    Conshohocken, PA 19428
    Telephone:    (610) 941-4204
    Facsimile:     (610) 941-4245


    Adam H. Springel, NBN 7187
    aspringel@springelfink.com
    **SPRINGEL & FINK LLP**
    2475 Village View Drive
    Suite 250
    Henderson, Nevada  89074
    Telephone:  (702) 804-0706
    Facsimile:  (702) 804-0798

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2011, I electronically filed the foregoing **MOTION TO SANCTION DEFENDANTS' ATTORNEYS FOR IMPROPER CONDUCT DURING DEPOSITIONS** using the CM/ECF system which will send a notice of electronic filing to all parties as listed on the Notice of Electronic Filing.

Patrick H. Hicks, Esq.
Rick D. Roskelley, Esq.
Wendy Medura Krincek, Esq.
**Littler Mendelson**
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV  89169-5937

*Attorney for Defendant*

/s/Bharati O. Sharma
**Bharati O. Sharma**