1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## DISTRICT OF NEVADA

10
11

\* \* \*

12  CHARI FETROW-FIX and THOMAS          )    Case No.: 2:10-cv-00560-RLH-PAL
    SORANNO, individually and on behalf of all )
13  others similarly situated,               )        **O R D E R**
                                             )
14            Plaintiffs,                     )    (Motion for Summary Judgment–#83;
                                             )          Motion to Strike–#104)
15       vs.                                  )
                                             )
16  HARRAH'S ENTERTAINMENT, INC., a          )
    Delaware Corporation; HARRAH'S           )
17  OPERATING COMPANY, INC.; HARRAH'S        )
    LAUGHLIN, INC.; and DOES No. 1 through   )
18  100, inclusive,                           )
                                             )
19            Defendants.                     )
    _____ )

20

21          Before the Court is Defendants Harrah's Entertainment, Inc., Harrah's Operating

22  Company, Inc., and Harrah's Laughlin, Inc.'s **Motion for Summary Judgment** (#83, filed June 6,

23  2011) and Plaintiffs Chari Fetrow-Fix and Thomas Soranno's **Motion to Strike Exhibits GG, JJ,**

24  **LL and MM to Defendants' Reply in Support of Defendants' Motion for Summary**

25  **Judgment** (#104, Aug. 18).  The Court has also considered all the relevant oppositions and replies

26  for these motions.

1

**BACKGROUND**

2       Plaintiffs are former employees of Defendants.  Plaintiff Fetrow-Fix was a Game

3  Supervisor and Plaintiff Soranno was a dealer at the Harrah's Laughlin Hotel & Casino.  In April

4  2010, Plaintiffs filed this lawsuit as a collective action alleging Defendants violated §§ 206(a) and

5  207(a) of the Fair Labor Standards Act ("FLSA"), by failing to pay Plaintiffs and others similarly

6  situated minimum wages and/or overtime compensation.  Plaintiffs also assert a claim under

7  Nevada labor law.  To date, approximately 16 opt-in plaintiffs have joined this case.  Defendants

8  have now filed a motion for summary judgment as to Fetrow-Fix's FLSA claims.  Plaintiffs then

9  filed a motion to strike various exhibits filed by Defendants in support of their motion for

10  summary judgment.  For the reasons discussed below, the Court grants Defendants' motion for

11  summary judgment and denies Plaintiffs' motion to strike.

12

**DISCUSSION**

13  **I.**      **Defendants' Motion for Summary Judgment**

14           **A.**      **Legal Standard**

15       The purpose of summary judgment is to avoid unnecessary trials when there is no

16  dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

17  1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when "the pleadings, the discovery

18  and disclosure materials on file, and any affidavits show there is no genuine dispute as to any

19  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

20  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder

21  could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the

22  suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

23  Where reasonable minds could differ on the material facts at issue, however, summary judgment is

24  not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The amount of

25  evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to

26  resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d

AO 72
(Rev. 8/82)

1    897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89

2    (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all

3    inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v.  Fishbach*

4    *& Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

5              The moving party bears the burden of showing that there are no genuine issues of

6    material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry

7    its burden of production, the moving party must either produce evidence negating an essential

8    element of the nonmoving party's claim or defense or show that the nonmoving party does not

9    have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

10   *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the

11   moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to

12   "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

13   The nonmoving party "may not rely on denials in the pleadings but must produce specific

14   evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

15   *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply

16   show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285

17   F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of

18   evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

19        **B.      Analysis**

20             The FLSA contains an exemption from its minimum wage and overtime

21   requirements for employees employed in a bona fide executive, administrative, or professional

22   capacity.  29 U.S.C. § 213(a)(1).  Defendants argue that Fetrow-Fix was an executive and

23   administrative employee.  The Court addresses each argument below.

24   ///

25   ///

26   ///

AO 72
(Rev. 8/82)

### 1.      Executive Employee

The Court will first address whether Fetrow-Fix was an exempt executive employee under the FLSA.

### a.      Salary Basis

First, to qualify as an exempt executive employee, an employee must be "compensated on a salary basis," 29 C.F.R. § 541.100(a)(1), which means that the employee must receive a predetermined amount of compensation for each week in which the employee performs any work, which amount may not be "subject to reduction because of variations in the quality or quantity of work performed." *Id*. at § 541.602(a).  However, "[d]eductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability." *Id*. at § 541.602(b)(1).  "An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis." *Id*. at § 541.603(a).  An employer's intent not to pay employees on a salary basis can be demonstrated by an actual practice of making improper deductions. *Id*.

To determine whether an employer has an actual practice of making deductions, the Court considers the following factors: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions. *Id*.  "If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deduction.

///

AO 72
(Rev. 8/82)

1    Employees in different job classifications or who work for different managers do not lose their

2    status as exempt employees." *Id*. at § 541.603(b).

3            The Court will now address each of the factors listed above to determine whether

4    Fetrow-Fix was paid on a salary basis**.**

5                        **i.        Number of Improper Deductions**

6            Under this first factor, the Court considers the number of improper deductions,

7    particularly as compared to the number of employee infractions warranting discipline.  First, the

8    Court notes that Fetrow-Fix herself never actually suffered a reduction in pay.  (#94, Opposition,

9    14:8).  Nevertheless, the Court may still consider evidence of improper deductions as to other

10   Harrah's employees to determine whether Defendants had an actual practice of making improper

11   deductions.  29 C.F.R. § 541.603(b).  If the evidence demonstrates that Defendants had an actual

12   practice of making improper deductions as to other Harrah's employees, the exemption is lost as to

13   Fetrow-Fix as well if she worked the same job for the same managers as these other employees.

14   *Id*.

15           Plaintiffs claim that Deena Fetrow and Audra Patterson, former supervisors at

16   Bally's Atlantic City, and Ron Watson, a former supervisor at Harrah's Laughlin, were subject to

17   improper deductions from their pay.  However, the evidence produced by Defendants demonstrates

18   that Fetrow, Patterson, and Watson's pay was properly reduced due to FMLA leave.  (#98, Reply,

19   Ex. II, KK, LL).  And even assuming the deductions were improper, the Court finds that, in

20   weighing this factor, Fetrow and Patterson's alleged improper deductions are less persuasive than

21   Watson's because Fetrow and Patterson worked at a different location than Fetrow-Fix, and,

22   therefore, most likely under different managers.  29 C.F.R. § 541.603(b).

23           Plaintiffs also claim that Kathy Stumbaugh, a former supervisor at Harrah's

24   Laughlin, was subject to improper reductions of pay during March and April of 2009.  However,

25   as with Fetrow, Patterson, and Watson, Defendants provide evidence demonstrating that

26   Stumbaugh was on FMLA leave during that period.  (#98, Reply, Ex. GG).  Plaintiffs also allege

AO 72
(Rev. 8/82)

that Stumbaugh suffered a reduction in pay because her total pay for 2009 was $44,935.12 when it should have been $46,604.89.  Defendants argue that Plaintiffs' allegation fails to account for the fact that the last pay period of 2009 was paid to Stumbaugh in 2010.  However, even accounting for that last pay period, Stumbaugh's salary would only total $46,399.12, which is still less than what Plaintiffs claim it should have been.  Nevertheless, the Court finds that this alleged reduction of pay carries little weight in this analysis because it could have been a result of any number of valid reductions under the FLSA, like, for example an absence from work for personal reasons or FMLA leave.  Finally, Plaintiffs claim that Stumbaugh's salary was improperly reduced on July 15, 2010.  However, according to the evidence provided by Defendants, Stumbaugh took a personal day off on that day, (#98, Reply, Ex. HH, JJ), and deductions are permissible for absences "from work for one or more full days for personal reasons."  29 U.S.C. § 541.602(b)(1).

Therefore, with respect to this first factor—the number of actual improper deductions—the evidence before the Court demonstrates that Defendants have not made any improper deductions of pay.  Fetrow-Fix herself admits that she never suffered a reduction of pay.  (#94, Opposition, 14:8).  Accordingly, the Court finds that this factor weighs in favor of finding that Fetrow-Fix was paid on a salary basis.

ii.     **Time Period of Improper Deductions; Number and Location of Employees and Managers**

Next, the Court considers the time period during which the employer made improper deductions, the number and geographic location of employees whose salary was improperly reduced, and the number and geographic location of managers responsible for making the improper deductions.  However, because the evidence demonstrates Defendants have not made any improper deductions, there is no evidence to consider for these factors and, as such, they weigh in favor of finding that Fetrow-Fix was paid on a salary basis.

///

///

AO 72
(Rev. 8/82)

1
2

        **iii.**       **Clearly Communicated Policy Permitting Improper**
                               **Deductions**

3
4
5
6
7
8
9
10
11
12
13

        Finally, the Court considers whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.  Fetrow-Fix testified that her salary would be reduced if she took an "early out"[1] when her PTO bank was exhausted.  In support of this testimony, she points to the Harrah's Laughlin Employee Handbook, which states: "PTO can be taken in 1-hour increments by employees and in 4 or 8-hour increments by salaried employees.  Salaried employees are not allowed to be paid in increments less than 4 hours as doing so would jeopardize their exempt status under the [FLSA]."  Yet, Fetrow-Fix does not explain how this policy "explicitly" allows for partial-day deductions from salary.  To the contrary, the policy seems to allow for partial-day deductions from the PTO bank, not the salary, and such deductions do not compromise an employee's exempt status.  (#83, Motion for Summary Judgment, Ex. X, Dep. of Labor Opinion Letter, FLSA2005-7).

14
15
16
17
18
19
20
21
22
23
24

        In her deposition testimony, Fetrow-Fix also claimed that she once "had to give another supervisor the form to sign stating that he understood his pay was being docked for no work without PTO."  (#94, Opposition, Ex. 1, Fetrow-Fix Dep., 115:8-13).  However, this testimony is far too vague to establish the existence of a clearly communicated policy.  First, it is unclear from Fetrow-Fix's testimony whether the unnamed supervisor's salary was being reduced for a whole day, or for a partial day.  But even if the supervisor's salary was being reduced for a partial day, it is unclear from Fetrow-Fix's testimony that the reduction was improper.  For example, it may have been reduced for a partial day absence under the FMLA and such a reduction would be completely proper.  29 C.F.R. § 541.602(b)(7).  Fetrow-Fix is asking the Court to assume a lot in order to find a clearly communicated policy from her deposition testimony, and the Court is unwilling to oblige.

25
26

---

     [1] An "early out" occurs when an employee is permitted to leave work early because business is slow.

AO 72
(Rev. 8/82)

1    Various other witnesses deposed in this matter testify that Defendants' policy

2    allowed for improper deductions of their pay.  (*See* #94, Opposition, Ex. 1, 4–9).  For example,

3    Sandra Bryant, a former employee of Defendants, testified that her salary would be reduced if she

4    had to leave work early due to illness and her PTO bank was exhausted.  (*Id*., Ex. 4, Bryant Dep.,

5    100:17-24, 101:1-6).  Deena Fetrow, a former supervisor at Bally's Atlantic City, testified that

6    whenever an employee worked less than 40 hours in a week, and the employee's PTO bank was

7    exhausted, the employee's pay would be reduced to reflect the absence.  (*Id*. Ex. 5, Fetrow Dep.,

8    32-33).  Nicolette Harvard, also a former employee, testified that she "thinks" an employee's

9    salary would be reduced if they arrived to work late and the employee's PTO bank was exhausted.

10   However, the Court finds that this testimony is insufficient to establish that Defendants had a

11   clearly communicated policy permitting improper deductions, especially in light of Defendants'

12   evidence to the contrary.  (83, Motion for Summary Judgment, Ex. W, Candy Basso Dep., 47:12-

13   25, 48:1-9; Ex. C, Handbook, §3.7).  Therefore, this factor also weighs in Defendants' favor,

14   though less strongly than other factors.

15                              iv.    **Conclusion**

16            The Court finds that the foregoing factors weigh in favor of finding that Defendants

17   did not have an actual practice of making improper deductions.  Accordingly, the Court finds that

18   Fetrow-Fix was paid on a salary basis, and as such, the first requirement under the executive

19   employee exemption is satisfied.

20                       **b.     Primary Duty**

21            Under the second requirement, the Defendants must show that Fetrow-Fix was an

22   employee "whose primary duty is management of the enterprise in which the employee is

23   employed out of a customarily recognized department or subdivision thereof."  29 C.F.R. §

24   541.100(a)(2).  "The term 'primary duty' means the principal, main, major, or most important duty

25   that the employee performs."  The Court considers the following factors when determining the

26   primary duties of an employee: the relative importance of the exempt duties as compared with

1   other types of duties; the amount of time spent performing exempt work; the employee's relative

2   freedom from direct supervision; and the relationship between the employee's salary and the

3   wages paid to other employees for the kind of nonexempt work performed by the employee.  *Id.* at

4   § 541.700(a).

5       The term "management" is also further defined as including duties such as

6   monitoring or implementing legal compliance measures, directing the work of employees,

7   appraising their productivity and efficiency for promotion purposes, handling their complaints and

8   grievances, disciplining them, as well as various other duties.  *Id.* at § 541.102.  "The phrase 'a

9   customarily recognized department or subdivision' is intended to distinguish between a mere

10  collection of employees assigned from time to time to a specific job or series of jobs and a unit

11  with permanent status and function."  *Id.* at § 541.103.

12      Fetrow-Fix is a Game Supervisor with Harrah's.  Defendants provide evidence of

13  various responsibilities that Fetrow-Fix carried out, including, conducting semi-annual and annual

14  performance evaluations, preparing monthly reviews for dealers, leading one-on-one sessions with

15  dealers, and preparing work history notations for dealers.  (*See e.g., id*. at Ex. BB, 2009 Mid-Year

16  Review and Performance Evaluations; Ex. B, Fetrow-Fix Dep., 52:25, 53:1-15).  Additionally,

17  Fetrow-Fix admits that her other main responsibility was to protect the integrity of the game, *i.e.*,

18  to make sure dealers and guests do not cheat, correct mistakes made during games, and ensure

19  proper usage and safety of equipment.  (#94, Opposition, Ex. 1, 93:8-20).  The Court finds that all

20  of the foregoing duties are managerial in nature.  They involve the training, supervision, and

21  evaluation of employees, as well as protecting Harrah's equipment and business relations.  It is

22  true that some of these duties, such as performing evaluations and reviews for dealers, only took

23  Fetrow-Fix a short amount of time to actually complete.  However, in order to be in a position to

24  write out the evaluations and reviews, Fetrow-Fix needed to observe and monitor dealers on a day-

25  to-day basis to recognize their strengths and weaknesses.

26  ///

1    In addition, Defendants provide evidence of other duties Game Supervisor's have,

2    including, monitoring game activities for adherence to company policies and various regulatory

3    agencies' regulations, (#83, Motion for Summary Judgment, Ex. F, Game Supervisor Guidelines,

4    4), settling disputes on games, (*id*.), making sure guests are satisfied, (*id*.), coaching and

5    counseling dealers when they make mistakes, (*id*. at Ex. E, French Decl. ¶ 10; Ex. I, McHugh

6    Dep., 38:7-25, 40:9-13; Ex. L, Richards Decl., ¶ 8), issuing work history entries, which include

7    written commendations or mistakes made by dealers, (*id*.), preparing disciplinary write-ups of

8    dealers under their supervision, or providing input with respect to the discipline of dealers, (*id.* at

9    Ex. E, French Decl. ¶ 10; Ex. L, Richards Decl., ¶ 8), conducting semi-annual and annual

10   performance evaluations for dealers they supervise, (*id*. at Ex. B, Fetrow-Fix Dep., 52:25, 53:1-15;

11   French Decl., ¶ 9; Richards Decl., ¶ 5).  Although there is no evidence that Fetrow-Fix actually

12   performed any of these duties, the Court can reasonably conclude that she would have if the

13   opportunity arose.  That is so because Defendants' evidence consists of testimony from other

14   Game Supervisors and from Fetrow-Fix's superiors—persons who would be intimately familiar

15   with Game Supervisor duties—as well as provisions directly from the Game Supervisor

16   Guidelines, all recognizing these as a Game Supervisor duties.  Therefore, the Court finds that

17   Fetrow-Fix's primary duty was management of Harrah's or at least a unit of Harrah's.

18   Accordingly, Defendants have satisfied the second requirement for the executive exemption.

19                    **c.      Directs Work of Other Employees**

20   The parties do not dispute that the third requirement is satisfied, that is, that

21   Fetrow-Fix customarily and regularly directed the work of two or more other employees.

22   Therefore the Court will now address the fourth and final requirement.

23                    **d.      Authority to Hire or Fire**

24   Under the fourth requirement, Defendants must show that Fetrow-Fix had

25   "authority to hire or fire other employees or whose suggestions and recommendations as to the

26   hiring, firing, advancement, promotion or any other change of status of other employees are given

10

AO 72
(Rev. 8/82)

1    particular weight." 29 C.F.R. § 541.100(a)(4).  "To determine whether an employee's suggestions

2    and recommendations are given 'particular weight,' factors to be considered include, but are not

3    limited to, whether it is part of the employee's job duties to make such suggestions and

4    recommendations; the frequency with which such suggestions and recommendations are made or

5    requested; and the frequency with which the employee's suggestions and recommendations are

6    relied upon."  *Id*. at § 541.105.

7              Defendants' evidence demonstrates that Game Supervisors make recommendations

8    regarding a dealer's hiring (#83, Motion for Summary Judgment, Ex. M, Metz Decl., ¶ 4; Ex. V,

9    Collins Dep., 76:3-16) and firing (*id*. at Ex. K, Sapp Decl., ¶ 5; Ex. M, Metz Decl., ¶ 4) as part of

10   their duties, and that these recommendations are relied upon (*id*.).  Furthermore, with respect to

11   evaluating and reviewing dealers, which Fetrow-Fix admits were her duties, Defendants evidence

12   demonstrates that these evaluations are relied upon to determine whether to promote or terminate a

13   dealer.  (*Id*. at Ex. E, French Decl., ¶¶ 10, 11; Ex. K, Sapp Decl., ¶ 5; Ex. L, Richards Decl., ¶ 8;

14   Ex. M, Metz Decl., ¶ 4).  In addition, these evaluations occurred on a regular basis, not

15   sporadically.  Therefore, the Court finds Fetrow-Fix had the authority to make recommendations

16   as to the hiring, firing, and promotion of dealers.

17             Consequently, the Court finds that Defendants have provided sufficient evidence to

18   demonstrate that Fetrow-Fix was an executive employee.  No reasonable jury could find otherwise.

19   As an executive employee, the FLSA's minimum wage and overtime requirements do not apply to

20   Fetrow-Fix and her claims fail.

21             **2.       Administrative Employee**

22             The Court will now address whether Fetrow-Fix was an exempt administrative

23   employee under the FLSA.

24             **a.       Salary Basis**

25             The Court has previously determined that Fetrow-Fix was paid on a salary basis.

26   Therefore, the Court finds that this requirement is satisfied.

AO 72
(Rev. 8/82)

### b.     Primary Duty

Next, Defendants must show that Fetrow-Fix's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.200(a)(2).  "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  *Id*. at § 541.201(a). Examples of work "directly related to management or business operations" include accounting, budgeting, quality control, safety and health, marketing, personnel management, among other things.  *Id*. at § 541.201(b).

The Court finds that Fetrow-Fix's primary duty was the performance of office work directly related to the management and business operations of Harrah's.  Fetrow-Fix monitored table games to detect cheating by dealers and guests, (#94, Opposition, Ex. 1, 93:8-20), settled disputes between dealers and guests (#98, Reply, Ex. DD, Fetrow-Fix Dep., 97:19-98:4), monitored table games for adherence to company policies and various regulatory agencies' regulations, (#83, Motion for Summary Judgment, Ex. F, Game Supervisor Guidelines, 4; #98, Reply, Ex. EE, Fetrow-Fix Dep., 67:20-68:8), evaluated and coached dealers, (#83, Motion for Summary Judgment, Ex. B, Fetrow-Fix Dep., 52:25, 53:1-15; French Decl., ¶ 9; Richards Decl., ¶ 5), ensured compliance with gaming regulations, and performed various other duties outlined in Defendants' motion and reply.  These duties are administrative in nature.  Fetrow-Fix's duties make her an integral part of ensuring that the business is run properly with respect to table games. She is directly involved with personnel management and ensuring compliance with company policy.  Her duties are more akin to running the business than the manual labor contemplated as being non-exempt.  Accordingly, the Court finds that the second requirement of the administrative exemption has been satisfied.

///

1 **c.    Discretion and Independent Judgment**

2          Finally, Defendants must show that Fetrow-Fix's "primary duty includes the

3 exercise of discretion and independent judgment with respect to matters of significance." *Id*. at §

4 541.200(a)(3).  Discretion and independent judgment "involves the comparison and the evaluation

5 of possible courses of conduct, and acting or making a decision after the various possibilities have

6 been considered." *Id*. at § 541.202(a).  Factors to consider for this requirement include, but are not

7 limited to, whether the employee has authority to interpret or implement management policies or

8 operating practices, whether the employee represents the company in handling complaints, whether

9 the employee carries out major assignments in conducting business operations, and whether the

10 employee performs work that affects business operations to a substantial degree.  *Id*. at §

11 541.202(b).

12          As discussed above, Fetrow-Fix's primary duties include monitoring, supervising,

13 coaching, and training dealers, resolving disputes between dealers and customers, making

14 suggestions or recommendations for the hiring, firing, and promotion of dealers, and general

15 customer service, among other things.  In general, her duties involved the supervision and

16 monitoring of gaming operations for table games.  Thus, much of Fetrow-Fix's responsibility

17 involved the implementation of Harrah's policies and operating practices, as well as evaluating

18 different circumstances and deciding if action needed to be taken.  This is the essence of exercising

19 discretion and independent judgment.  The mere fact that her decisions were sometimes subject to

20 later review by her superiors does not change the fact that she had to exercise discretion to make

21 the decision in the first place.  29 C.F.R. § 541.202(c).

22          Accordingly, all of the requirements for both the executive and administrative

23 exemptions have been satisfied.  The Court therefore finds that Fetrow-Fix was an exempt

24 employee under the FLSA.  As such, her FLSA claims fail and the Court grants Defendants'

25 motion for summary judgment.

26 ///

AO 72
(Rev. 8/82)

13

1

2

## II.    Plaintiffs' Motion to Strike Exhibits GG, JJ, LL, and MM to Defendants' Reply in

Support of Defendants' Motion for Summary Judgment

3          On June 15, 2011, the Honorable Peggy A. Leen issued an order requiring

4   Defendants to "supplement their initial disclosures to provide all payroll records including payroll

5   adjustment forms, payroll request forms, time and attendance records, and leave records for each

6   of the opt-in Plaintiffs." (#87, Order, 6:21-23).  Plaintiffs now ask the Court to strike four of the

7   exhibits Defendants attached to their reply in support of their motion for summary judgment.

8   Plaintiffs argue that Defendants should have provided those exhibits earlier pursuant to Judge

9   Leen's order but failed to do so.  In the alternative, Plaintiffs ask the Court to consider the

10  additional arguments made in their motion to strike when analyzing the motion for summary

11  judgment.

12          "If a party fails to provide information or identify a witness as required by Rule

13  26(a) or (e),[2] the party is not allowed to use that information or witness to supply evidence on a

14  motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed.

15  R. Civ. P. 37(c)(1).  "Among the factors that may properly guide a district court in determining

16  whether violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to

17  the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice;

18  (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely

19  disclosing the evidence."  *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir.

20  2010).

21          Having considered the foregoing factors, the Court finds that Defendants failure to

22  supplement pursuant to Judge Leen's order was harmless.  The exhibits in question support

23  Defendants argument that Harrah's does not have a policy of making improper deductions from

24  the pay of exempt employees.  Specifically, as discussed above, the exhibits demonstrate that the

25

26          [2] Rule 26(e) requires a party who has already made a disclosure to supplement that disclosure if ordered
to do so by the court, Fed. R. Civ. P. 26(e)(1)(B), as is the case here.

1   deductions made to Kathy Stumbaugh and Audra Patterson's pay was because they were on FMLA

2   leave.  (#98, Reply, Ex. GG, LL).  However, the Court is not convinced that Plaintiffs were

3   surprised by the exhibits.  Exhibit GG consists of three pages.  The Defendants have previously

4   disclosed two of those pages to Plaintiffs.  (#107, Defendants' Opposition, Ex. A, Defendants'

5   Eighth Supplement, 2:15-16).  And because the third page deals with the same subject matter as

6   the other two, it is hard to believe that the Plaintiffs were surprised by it when they saw it in

7   Defendants' reply to Defendants' motion for summary judgment.

8          Exhibit LL consists of two documents, both of which are responses to Audra

9   Patterson's request for FMLA leave, and both of which Patterson partially filled out and signed.

10   While Patterson may have forgotten about these exact documents, or the exact dates on which she

11   took FMLA leave, it is hard to believe that she forgot about the fact that she took FMLA leave,

12   especially considering the fact it was for the purpose of caring extensively for her husband after an

13   apparent surgery.  Thus, the Court is not convinced that Plaintiffs were surprised by that

14   information.  In addition, with respect to the second and third factors above, the Court finds that,

15   as just discussed, there is little to no prejudice that Plaintiffs need to cure, and there is certainly not

16   a likelihood that the trial will be disrupted.  Also, there is no evidence before the Court that

17   demonstrates that Defendants acted in bad faith.

18          Furthermore, the additional arguments Plaintiffs ask the Court to consider when

19   analyzing the motion for summary judgment do not address Stumbaugh and Patterson at all, nor do

20   they cite to the exhibits at issue.  Instead, Plaintiffs arguments relate solely to opt-in plaintiff

21   Ronald Watson (discussed above), and how his pay deductions for FMLA leave were improper

22   under the FMLA.  Plaintiffs do not even cite the exhibits they ask the Court to strike in their

23   additional arguments.  Therefore, Plaintiffs' additional arguments demonstrate that this motion to

24   strike was more than likely merely an attempt by Plaintiffs to make additional arguments in

25   support of their opposition to Defendants motion for summary judgment.

26   ///

AO 72
(Rev. 8/82)

1    Finally, exhibits JJ and MM are merely the declarations of Candice Basso and

2   Heather Kinnear, respectively, in which they authenticate exhibits GG and LL.  Given that the

3   Court is denying Plaintiffs request to strike exhibits GG and LL, the Court sees no reason to strike

4   exhibits JJ and MM.  Accordingly, for the foregoing reasons, the Court denies Plaintiffs' motion to

5   strike.  And the Court will consider exhibits GG, JJ, LL, and MM, in its analysis of Defendants

6   motion for summary judgment.

7                                    **CONCLUSION**

8    Accordingly, and for good cause appearing,

9    IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#83)

10   is GRANTED.

11    IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (#104) is DENIED.

12    Dated: November 16, 2011

13

14   _____

15   **ROGER L. HUNT**
     **United States District Judge**

16

17

18

19

20

21

22

23

24

25

26

AO 72
(Rev. 8/82)